UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

DR. JOSEPH BATTISTA,

        Plaintiff,

      v.                                    Case No. 25-91

ASCENSION MEDICAL GROUP –
 SOUTHEAST WISCONSIN, INC.,

        Defendant.

---

NOW COMES the Plaintiff, Dr. Joseph Battista, through his attorneys, Alan C. Olson & Associates, S.C., by Alan C. Olson, and, as and for a Complaint against the Defendant, Ascension Medical Group - Southeast Wisconsin, Inc., alleges as follows:

### NATURE OF CASE

1. Plaintiff, Doctor Joseph Battista ("Dr. Battista") alleges that Defendant, Ascension Medical Group - Southeast Wisconsin, Inc., ("AMG") engaged in intentional unlawful age discrimination in violation of the Age Discrimination in Employment Act of 1967 by systematically excluding him from his essential professional duties, including meetings, patient care, and the emergency room, while willfully undertaking efforts to force him out of his position by restricting his work assignments, and prioritizing the hiring and advancement of younger, less qualified surgeons.

### JURISDICTION AND VENUE

2. Jurisdiction over Dr. Battista's claims under the Age Discrimination in Employment Act of 1967 [29 U.S.C. § 621 *et seq.*] is conferred on this Court by 28 U.S.C. § 1331.

3.      The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 USC § 1391, in that Defendant operates within the Eastern District and the unlawful actions occurred in the Eastern District.

## CONDITIONS PRECEDENT

4.      All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## JURY DEMAND

5.      Dr. Battista demands that his case be tried to a jury of his peers.

## PARTIES

6.      Dr. Battista is an adult citizen of the United States, residing at N29 W27496 Peninsula Drive, Pewaukee, WI 53072.

7.      Defendant, AMG, is a non-stock corporation with its principal office at 400 W River Woods Pkwy., Glendale WI, 53212, and its registered agent at 33 East Main Street, Suite 610, Madison WI 53703.

## OPERATIVE FACTS

8.      Dr. Battista was born on December 31, 1953.

9.      Dr. Battista graduated from medical school in 1983 and finished surgical residency in 1988.

10.      Dr. Battista was in private surgical practice for 21 years and performed surgeries at St. Joseph's Hospital since July 1, 1988.

11.      Dr. Battista joined Wheaton Franciscan, AMG's predecessor, in 2009.

12.      Dr. Battista has always been board certified and received many awards as a surgeon.

2

13. Dr. Battista has never been sued for malpractice and his medical license has never been restricted.

14. AMG's administration is aware of Battista's reputation as an excellent surgeon. According to fellow surgeons and staff, Dr. Battista is a beloved highly respected surgeon, a pillar and a legend in the surgical community.

15. In 2020, Dr. Battista started to discuss with the surgeons in his group, Drs. Berg and Nelson, adding a surgeon to their group and they decided on Dr. Goelz.

16. Drs. Berg and Nelson are at least 25 years younger than Dr. Battista.

17. Dr. Goelz was born September 11, 1990.

18. Drs. Goelz, Battista, Nelson, and Berg are all general surgeons.

19. Dr. Goelz started employment with AMG on July 25, 2022, and started performing surgery a month later. This was Dr. Goelz's first position out of residency.

20. Dr. Goelz passed his final boards in October or November 2022.

21. As of August 2022, through the present time, Dr. Goelz has been "pounding the pavement" to get patient referrals.

22. Dr. Battista's professional qualifications far exceed those of Dr. Goelz.

23. AMG hired Dr. Goelz to replace Dr. Battista.

24. Dr. Goelz took over Dr. Battista's work. However, Dr. Goelz could only perform basic surgeries, such as hernias, gall bladders, "lumps and bumps".

25. Dr. Battista is proficient at performing major vascular, pancreatic, liver, and adrenal surgeries, which Drs. Goelz, Nelson, and Berg do not. Dr. Battista also performs all types of general surgeries and was the only surgeon at St. Joseph's Hospital who performed breast cancer surgeries.

26.     Dr. Battista's role at AMG had always included helping the newer surgeons. Dr. Battista helped each new surgeon in the OR and also gave them his clinical hours to help them establish their own practices. Dr. Battista did these things for Dr. Goelz.

27.     If Dr. Goelz got into trouble during a case, he would call on Dr. Battista. Dr. Goelz also relied on Dr. Battista to review CT scans, evaluate new patients, and advise on emergency cases.

28.     Dr. Battista trained Drs. Berg and Nelson when they joined his group at AMG.

29.     Drs. Berg and Nelson refused to give up their clinical hours to help Dr. Goelz start his practice.

30.     By giving some office hours to Dr. Goelz, Dr. Battista was not reducing his volume of patients.

31.     When Dr. Goelz started, Dr. Nelson took Dr. Battista off the emergency call schedule, with the understanding that his main role would be as mentor to Dr. Goelz. Dr. Battista had taken calls since 1988 up to this point.

32.     Dr. Battista asked Dr. Nelson if he could take call one weekend per month to be fair and equitable. Dr. Nelson responded that he had the authority to make the schedule as the Chief of Surgery and that Dr. Battista should not worry about it because he had earned it with his age and seniority.

33.     In making the termination decision, AMG was not aware that Dr. Nelson had taken Dr. Battista off the ER call schedule, or that Dr. Battista was never asked to take more call.

4

34.     AMG did not warn Dr. Battista he would be terminated if he did not increase his calls.

35.     AMG incentivizes the younger surgeons to take call by paying them at a substantially higher rate when they take more than four calls per month.

36.     Dr. Battista's contract required that he take two to three calls per month. Dr. Battista always complied with his contract. No one ever told Dr. Battista he needed to increase his call hours.

37.     Drs. Nelson and Berg were each contractually required to take at least twice the number of calls covered by Dr. Battista.

38.     On August 1, 2022, AMG administrators came to Dr. Battista's office unannounced, asked Dr. Battista what plans he had for retirement, and when Dr. Battista said he was not planning to retire, they told him he was being terminated.

39.     Dr. Battista has no plans to retire and is still a practicing surgeon with a growing private practice.

40.     In the termination meeting, no mention was made of Dr. Battista's productivity or his call hours.

41.     At no time did anyone question Dr. Battista's call hours.

42.     No monthly meetings were held by AMG administration with Dr. Battista.

43.     No one told Dr. Battista orally or in writing that he was expected to increase his Relative Value Units ("RVU") numbers, or that he would be fired if he did not increase his RVUs.

44.     AMG did not give Dr. Battista the option to reduce his full-time status.

5

45.     AMG did not give Dr. Battista a termination letter until December 9, 2022, effective April 8, 2023. The letter said nothing about RVUs.

46.     AMG had never disciplined Dr. Battista before terminating his employment.

47.     Drs. Nelson and Berg knew about the termination weeks before Dr. Battista was told. They immediately stopped communicating with Dr. Battista and avoided him by ducking when they saw him.

48.     Dr. Battista never told anyone he was going to retire.

49.     Dr. Goelz knew that Dr. Battista wanted to keep working at AMG when his employment was terminated.

50.     AMG failed to credit Dr. Battista for his work at AMG facilities outside of St. Joseph's Hospital.

51.     When a surgeon works at a different facility, AMG normally reduces its expectations of RVU productivity at their home facility.

52.     In the process of terminating Dr. Battista's employment, AMG did not offset his RVUs for his work at AMG facilities outside of St. Joseph's Hospital.

53.     Three years before his termination, AMG's President asked Dr. Battista to work at AMG's Weston facility to rebuild its surgical practice one to two weeks per month.

54.     Due to Dr. Battista's work, surgeons returned to the Weston facility and others were recruited to the facility.

6

55. Dr. Battista's departure to Weston hurt his practice in Milwaukee. While Dr. Battista was in Weston, Drs. Berg and Nelson got his work and reduced Dr. Battista's production at St. Joesph's Hospital by 25%.

56. Before going to Weston, Dr. Battista had maintained RVUs of 4,000 to 6,000 annually.

57. The reduction of productivity at St. Joseph's Hospital due to working at Weston had a lasting negative affect because doctors get into referral routines.

58. Notwithstanding this setback, Dr. Battista's productivity was increasing during the three months prior to AMG's termination of his employment, and was higher than the surgeons who were retained by AMG.

59. AMG also did not credit Dr. Battista for his work at the Teamsters (Wisconsin Health) clinic, which is a feeder to AMG for cancer care, orthopedics, and surgery. At Wisconsin Health alone, there were 20 surgeries that AMG failed to credit to Dr. Battista.

60. Dr. Goelz's RVU goal was set at virtually the same level as Dr. Battista's RVUs for 2022

61. Dr. Goelz failed to meet his target RVUs.

62. AMG paid Drs. Goelz, Berg, and Nelson a guaranteed salary. In contrast, AMG was paying Battista based on his production—not a set salary.

63. During secret meetings to plan Dr. Battista's termination, AMG considered an accelerated retirement offer for Battista to quit, or instead cutting his pay to prompt his resignation.

7

64. AMG did not terminate any of the seven surgeons at Elmbrook Hospital who all perform general surgery.

65. Dr. Wu was one of those surgeons who had RVUs similar to Dr. Battista.

66. Dr. Wu was not terminated because AMG determined that he had a skillset that served that patient community, but AMG did not do the same analysis for Dr. Battista.

67. From January 2022 through April 8, 2023, AMG excluded Dr. Battista from meetings and communication that he needed to perform his role as a healthcare provider and surgeon.

68. During August 2022 through April 8, 2023, AMG excluded Dr. Battista from the emergency room, new-patient care, and elective treatments.

69. During August 2022 through April 8, 2023, AMG made plans to force Dr. Battista out of his employment and assign his work to surgeons who are significantly younger.

70. At the time of these events, Dr. Battista was 69 years old.

71. Dr. Battista is better qualified than the significantly younger surgeons.

72. On or about April 8, 2023, AMG terminated Dr. Battista's employment because of his age.

## CLAIM FOR RELIEF
## AGE DISCRIMINATION IN EMPLOYMENT ACT

73. In this Claim For Relief, Dr. Battista re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

74. § 623(a)(1) of the Age Discrimination in Employment Act makes it unlawful for an employer to discharge any individual or otherwise discriminate against

8

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

75.     § 623(a)(1) of the Age Discrimination in Employment Act makes it unlawful for an employer to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

76.     At all relevant times, Dr. Battista was between the ages of 68 and 69 years of age and, therefore, a member of the protected class under the Age Discrimination in Employment Act of 1967 [29 U.S.C. § 621 *et seq.*]*,* which prohibits discrimination against individuals who are 40 years of age or older.

77.     AMG intentionally took adverse actions against Dr. Battista because of his age, which included treating him less favorably than comparably situated and significantly younger employees, excluding him from communication, failing to follow employment policies, and termination of his employment.

Wherefore Plaintiff, Dr. Joseph Battista, demands that judgment be entered and Defendant ordered to provide the following remedies:

A.     Compensatory damages for losses of wages, benefits, and expenses;

B.     reinstatement and/or damages for monetary losses and expenses including front pay;

C.     costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting these claims, together with interest on said fees;

9

D.      liquidated damages for willful violations of the ADEA; and

E.      such other relief as the Court deems just and equitable.

Dated this 20th day of January, 2025.


*Electronically signed by Alan C. Olson*
Alan C. Olson, Bar Number: 1008953
Tristan N. Bullington, Bar Number: 1138110
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI  53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@EmployeeAdvocates.com